CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 3 1 2008

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TROY D. CARTWRIGHT,<br>　　Plaintiff, | )<br>)<br>) | Civil Action No. 7:08-cv-00250 |
| v. | )<br>)<br>) | **MEMORANDUM OPINION** |
| D. MEADE, <u>et al.</u>,<br>　　Defendants. | )<br>)<br>) | By: Hon. Glen E. Conrad<br>United States District Judge |

Plaintiff Troy D. Cartwright, Virginia inmate number 222175, brings this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff, currently a Virginia Department of Corrections ("VDOC") inmate housed at Green Rock Correctional Center in Chatham, Virginia, alleges that prison officials with the VDOC and at Wallens Ridge State Prison ("Wallens Ridge") in Big Stone Gap, Virginia, violated his First and Fourteenth Amendment constitutional rights in April 2006 when they confiscated gang-related materials. Plaintiff maintains that the confiscated documents are actually personal religious materials. Defendants have submitted a motion for summary judgment, supported by affidavits and other evidence, and plaintiff has responded to the motion. For the reasons that follow, the court will grant defendants' motion and dismiss the complaint.

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Rule 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at at 256-57.

In his complaint, plaintiff alleges that, on April 1, 2006, "defendants illegally confiscated [his] personal religious materials from [his] cell, in violation of [his] First Amendment right to freedom of religion." Plaintiff further contends that "defendants illegally disposed of [his] personal religious materials, in violation of [his] Fourteenth Amendment [right] to due process of law."

Based upon plaintiff's and defendants' submissions, the uncontroverted facts are as follows. On April 1, 2006, in the course of a shakedown of plaintiff's cell at Wallens Ridge, an officer discovered several pages of material regarding the Five Percenters, an organization that has been identified by the VDOC as a security threat group ("STG").[1] Plaintiff admitted ownership of these materials, which the Gang Management Unit of the VDOC has reviewed and has determined to contain gang-related material. The officer filled out a Notice of Confiscation of Property form and

---

[1] Courts have held that members of the Five Percent Nation of Islam, known as "Five Percenters," have been linked to violence in prisons around the country. See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 466-67 (4th Cir. 1999), cert. denied, 528 U.S. 874 ("In re Five Percenters"). Reportedly, Five Percenters espouse radically racist views and support acts of violence as a means to an end. See id. The "Five Percenters," also known as "[t]he Nation of Gods and Earths, commonly known as the Five Percent Nation, the Five-Percent Nation of Islam, or the Five Percenters. . . . teach that Black people specifically, and the entire world population more generally, can be divided into three groups" and that "[t]he 5% . . . are the enlightened divine beings. . . ." See http://en.wikipedia.org/wiki/The_Nation_of_Gods_and_Earths.

2

removed the items from the cell. The items were reviewed by another officer, and then sent to the Institutional Investigator for review and final disposition. Plaintiff was charged with an institutional offense of possession of STG-related material; however, it appears that the charge was never officially served on plaintiff and he was never subjected to discipline as a result of the charge.

On February 2, 2007, plaintiff filed an informal complaint concerning the confiscation of his material. Because he was removed from Wallens Ridge on April 4, 2006, for the purpose of appearing in court, and did not return to Wallens Ridge until January 18, 2007, he was apparently permitted to proceed with his informal complaint and subsequent regular grievance, although the issue was otherwise untimely. Because the material was determined to be STG-related, plaintiff's grievance seeking the return of the material was denied by the Level I respondent, and the Level II respondent affirmed the denial. The material that was confiscated has not been destroyed, but is being maintained at the VDOC's Gang Unit offices.

The crux of plaintiff's complaint – that the VDOC's classification of the Five Percenters as a security threat group violates the Free Exercise Clause of the First Amendment – has been thoroughly addressed by the United States Court of Appeals for the Fourth Circuit. In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 466-67 (4th Cir. 1999), cert. denied, 528 U.S. 874 ("In re Five Percenters"). In that case, the Court assumed "that the Five Percenters are a religious group entitled to First Amendment protection," id. at 468, but held nonetheless that, because the classification of "Five Percenters as an STG is rationally related to the legitimate end of prison safety and security, it does not offend the Free Exercise Clause," id. at 471. Significantly, plaintiff concedes the defendants' characterization of the confiscated material as relating to the Five Percenters. Plaintiff has suggested no factual or legal basis demonstrating that

3

the precedent of In re Five Percenters does not apply to his First Amendment claim,[2] and defendants' motion and affidavit evidence indicate that the precedent is controlling here. The reasons given by defendants for the confiscation of plaintiff's STG-related material state a legitimate security interest.[3]

---

[2] Plaintiff does not allege that the classification of the Five Percenters as an STG (and the resultant confiscation of his Five Percenters-related material) violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. However, even had plaintiff brought such a claim, it would likewise fail, as plaintiff has not shown that the governmental action of classifying Five Percenters as an STG substantially burdens his exercise of religion. Lovelace v. Lee, 472 F.3d 174, 187 (2006). The Supreme Court has defined "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981); Lovelace, 472 F.3d at 187. Only when such a showing is made does the government bear the burden of persuasion that its practice is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. Lovelace, 472 F.3d at 187; Adkins v. Kaspar, 393 F.3d 559, 567 n. 32 (5th Cir. 2004), cert. denied, 545 U.S. 1104 (2005); Civil Liberties for Urban Believers v. Chicago, 342 F.3d 752, 760 (7th Cir. 2003), cert. denied, 541 U.S. 1096 (2004). Although "the inquiry under RLUIPA is more rigorous than under the First Amendment," Lovelace, 472 F.3d at 188 n. 3, plaintiff does not raise any allegations whatsoever in the instant complaint that the STG classification has prevented him from exercising his religious practices, such as praying, studying religious materials, fasting, or partaking of a diet in conformity with the dictates of his religion. In sum, he has not alleged that the STG classification places a substantial burden on his exercise of religion.

[3] Defendants' affidavit evidence states that the VDOC has a "zero tolerance" policy for gang activities; that "[i]nmates are prohibited from joining, recruiting for, associating with, participating in, or acting in concert with any other individuals or groups who may constitute a gang"; and that "[i]nmates are prohibited from possessing correspondence, documents, symbols or other writings of any type that may indicate gang involvement." The affidavit evidence indicates that the Five Percenters, or "Nation of Gods and Earths," is a gang, not a religious organization, and that the organization itself, in its own publications, insists that it is not a religion. The VDOC considers the organization as a "gang/hate group." The documents at issue in this case were reviewed by the Gang Management Unit and have been determined to contain gang-related material. The documents were confiscated as contraband according to VDOC policy, and are being securely held as gang intelligence, having been transferred to the Gang Management Unit, where the material is treated as evidence.
Defendants further maintain

> that the Five Percent organization . . . is a radical offshoot of the Nation of Islam which claims to be non-religious in nature. The group uses secret codes to communicate with the prison environment, and uses a military type structure or hierarchy of command. The VDOC has taken measures to assess and identify a variety of security threat groups, which are groups which pose a threat to the security and integrity of penal operations. The Five Percent organization has been identified as a nationally known security threat group, and in order to curtail the organization of this group and to discourage inmate membership, the VDOC by policy prohibits inmate group meetings, correspondence, and possession of literature pertaining to this group.

Mot. Summ. J. at 4 (citing Ex. IV).
It is clear that the VDOC's confiscation of plaintiff's Five Percenter materials based upon its classification of the Five Percenters as a security threat group is reasonably related to legitimate penological interests. See, e.g.,
(continued...)

4

Moreover, it is clear from defendants' submissions that plaintiff's personal property has not been destroyed, plaintiff's bald assertions that it has been destroyed notwithstanding.[4]

Based on the foregoing, the court will grant summary judgment in favor of defendants. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to all counsel of record for defendants.

ENTER: This 30th day of July, 2008.

*[signature]*
United States District Judge

---

[3](...continued)
Fraise v. Terhune, 283 F.3d 506, 519 (3d Cir. 2002) (upholding a ban on Five Percenter newspapers where inmates could possess, study, and discuss the Bible and the Koran); Brown v. D.O.C. PA, 265 Fed. Appx. 107, 110 (3d Cir. 2008) (same, granting summary judgment for defendants under First Amendment and RLUIPA); Harbin-Bey v. Rutter, 420 F.3d 571 (6th Cir. 2005) (confiscation of inmate's Five Percenter-related mail did not violate inmate plaintiff's constitutional rights); Johnson v. Stewart, 2008 WL 828086 (W.D. Mich. March 26, 2008) (confiscation of Five Percenter literature did not violate First Amendment); Talbert v. Jabe, Civil Action No. 7:07-cv-00450 (W.D. Va. November 8, 2007) (confiscation of Five Percenters-related mail did not violate First Amendment or RLUIPA); Bells v. Ozmint, 20007 WL 1862668 (D. S.C. June 6, 2007) (confiscation of Five Percenters-related material did not violate First Amendment or RLUIPA); Cooper v. Starling, 2003 WL 23350443 (E.D. N.C. January 8, 2003) (confiscation of STG-related medallion not violative of plaintiff's constitutional rights).

[4] Regardless of whether the material has been destroyed, the availability of effective state remedies means that allegations that a state actor has negligently or intentionally destroyed, lost, or interfered with personal property do not state a procedural due process claim for which state officials can be held liable under § 1983. Pink v. Lester, 52 F.3d 73 (4th Cir.1995) (citing Daniels v. Williams, 474 U.S. 327 (1986)), Bowler v. Young, 2003 WL 24253707 *1 (W.D. Va June 25, 2003), aff'd, 78 Fed. Appx. 281 (4th Cir. 2003). To the extent plaintiff believes the complaint could be construed to state an actionable claim against the defendants under state law, the court declines to exercise supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c).

5